IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | | |
|---|---|---|
| **DAVID AUSTIN**, individually, and on behalf of all others similarly situated, | : | CIVIL ACTION |
| | : | |
| | : | No.: |
| Plaintiffs, | : | Hon. |
| | : | |
| v. | : | |
| | : | |
| **KEN'S FOODS, INC.**, | : | |
| | : | |
| Defendant. | : | |
| | : | |

### COLLECTIVE AND CLASS ACTION
### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, David Austin ("Plaintiff"), individually and on behalf of all similarly situated hourly employees (Plaintiff along with the putative members of the FLSA Collective and Rule 23 Classes are hereinafter referred to as "Plaintiffs"), by and through his undersigned attorneys, hereby brings this Collective and Class Action Complaint against Defendant, Ken's Foods, Inc. ("Defendant"), and alleges as follows:

### INTRODUCTION

1.     This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated hourly employees employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; the Massachusetts Overtime Act, M.G.L. ch. 151 §1A; the Massachusetts Wage Act, M.G.L. ch. 149 §148; and common law.

2.     Defendant is a "leading manufacturer of salad dressings and sauces, as well as mayonnaise and barbeque sauces."[1] Defendant offers a wide range of products including over

---

[1] https://jobs.kensfoods.com/our-locations/ (last visited February 27, 2024).

1,000 varieties of dressing and sauces.[2]

3.    Defendant employs and employed hourly workers, including Plaintiffs, to facilitate its operations.

4.    Plaintiffs are and were employed at Defendant's manufacturing facilities in Marlborough, Massachusetts; Las Vegas, Nevada; McDonough, Georgia; and Lebanon, Indiana.[3]

5.    Defendant required Plaintiffs to wear company-issued uniforms and protective clothing during their work shifts to comply with company policies, as well as food-safety and health regulations.

6.    The company-issued protective clothing and safety gear included button up pants, a long sleeve shirt with snaps down the middle, safety shoes, a hard hat, a coat and/or jacket, beard and hair nets, earplugs, and safety glasses (hereinafter, this personal protection equipment will be collectively referred to as "the PPE").[4]

7.    Defendant required Plaintiffs to change into ("don") and change out of ("doff") the PPE before and after their work shifts in designated locations at Defendant's manufacturing facilities.

8.    The process of donning and doffing the PPE was compensable because Defendant required Plaintiffs to don and doff at the worksite and because government regulations required Plaintiffs to wear the PPE during their work shifts and to don and doff the PPE at the worksite.

9.    Additionally, the PPE was an integral and indispensable part of the Plaintiffs'

---

[2] https://jobs.kensfoods.com/who-we-are/ (last visited February 27, 2024).
[3] https://jobs.kensfoods.com/our-locations/ (last visited February 27, 2024).
[4] The exact required PPE may vary slightly from department to department and facility to facility, however, the PPE required was either the same or substantially similar across all departments and facilities. All of Defendant's hourly employees across departments and facilities were required to wear an array of PPE, including company-issued pants, shirts, safety shoes, hard hats, coats and/or jackets, beard and hair nets, earplugs, and safety glasses.

principal work activities, as the Plaintiffs could not safely or lawfully perform their work activities without wearing the PPE.

10.     Plaintiffs spent substantial amounts of time each day donning and doffing the PPE and walking to and from the locker rooms and the production areas before and after their work shifts.

11.     Defendant, however, did not pay the Plaintiffs for all of this time. Instead, Defendant only paid Plaintiffs based on their scheduled shift times. As Plaintiffs were required to don their PPE before their scheduled shift time, and required to be fully dressed and ready to work at the beginning of their scheduled shift time, and likewise, doff their PPE after the end of their scheduled shift time, Plaintiffs were not paid for the time they spent donning and doffing the PPE. All of the time Plaintiffs spent donning and doffing the PPE was "off the clock."

12.     Consequently, Defendant failed to pay Plaintiffs for all compensable time, including overtime.

13.     Defendant required Plaintiffs to don and doff the same or substantially similar PPE, and Defendant compensated Plaintiffs in the same or similar manner.

14.     The Named Plaintiff seeks to represent current and former hourly employees who work(ed) for Defendant at its manufacturing facilities in Marlborough, Massachusetts; Las Vegas, Nevada; McDonough, Georgia; and Lebanon, Indiana and who are/were required to don and doff protective clothing and safety gear before the start of and/or after the end of their work shifts. Hourly employee positions at Defendant's manufacturing facilities include, but are not limited to, employees holding the following positions: Forklift Operators, Machine Operators, Batch Processing Operators, Processing Supervisors, Mechanics, Sanitation employees, Team Leaders, Distribution employees, Packaging Operators, Maintenance Planners, Maintenance Supervisors,

Maintenance Technicians, Maintenance Foremen, Kitchen Mixers, Quality Control Technicians, Quality Assurance employees, Material Handlers, Safety Managers, Packaging Line Engineers, Production employees, and Production Supervisors.[5]

15.    Defendant knew or could have easily determined how long it took Plaintiffs to complete their donning and doffing, and Defendant could have properly compensated Plaintiffs for this pre- and post-shift work, but deliberately chose not to.

16.    Defendant's practice of failing to compensate Plaintiffs for all hours worked violated their rights under the FLSA.

17.    Defendant is liable for its failure to pay the Plaintiffs at the correct overtime rate for all hours worked in excess of 40 per week.

18.    Employees who elect to participate in this FLSA collective action seek compensation for all off-the-clock and uncompensated work performed for Defendant, and compensation at the appropriate overtime rate for all hours worked in excess of 40 per week, an equal amount for liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

19.    Plaintiff seeks a declaration that his rights, and the rights of the putative collective/class members were violate as well as an award of unpaid wages, liquidated damages, injunctive and declaratory relief, attendant penalties, and attorneys' fees and costs to make them whole for damages they suffered, and to ensure that Defendant will not subject them or future workers to such illegal conduct in the future.

## JURISDICTION

20.    This Court has subject matter jurisdiction over Plaintiff's FLSA claim under 28

---

[5] https://jobs.kensfoods.com/;  https://jobs.kensfoods.com/jobs/ (last visited February 23, 2024).

U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201 *et seq.*

21.     Additionally, this Court has jurisdiction over Plaintiff's FLSA claim under 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

22.     The FLSA applies in this case on an enterprise basis because Defendant's annual sales exceed $500,000, and Defendant has more than two employees.  The FLSA applies in this case on an individual basis because Defendant's employees, including Plaintiff, engage in interstate commerce or in the production of goods for commerce.

23.     This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 because the state law claims and the federal claim are so closely related that they form part of the same case or controversy under Article III of the United States Constitution.

24.     This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

25.     This Court has personal and general jurisdiction over Defendant because it maintains its principal place of business in Massachusetts. *Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84 (1st Cir. 2022), cert. denied, 142 S. Ct. 2777 (2022).

## **VENUE**

26.     Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b) and (c) and L.R. 40.1 (c) because Defendant conducts business in, and is headquartered in, this District and division, and a substantial portion of the events that give rise to the Plaintiff's claims occurred in this District and division.

27.     All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

## PARTIES

28.     Plaintiff David Austin is a Massachusetts resident who has worked for Defendant as an hourly employee at Defendant's Marlborough, Massachusetts manufacturing facility since October, 2011. Defendant most recently paid Plaintiff $38.00 per hour, plus shift premium pay. *See* **Exhibit A**, Plaintiff's January 25, 2024 Earnings Statement. Throughout his employment with Defendant, Plaintiff typically worked up to 40 or more hours per week and has worked overtime during numerous workweeks. Plaintiff signed a consent form to join this collective action lawsuit. **Exhibit B**.

29.     Plaintiff submitted a wage complaint to the Massachusetts Attorney General's Office and received authorization to file suit on

30.     Defendant employed additional putative Collective and Class Members as hourly employees in Massachusetts, Nevada, Georgia, Indiana, and potentially other states during the past three years, and their consent forms will also be filed in this case.

31.     Defendant Ken's Foods, Inc. is a Massachusetts corporation with its principal executive office located at 1 D'Angelo Drive, PO Box 849, Marlborough, Massachusetts 01752. Its registered agent for service of process is James F. Sutherby at 1 D'Angelo Drive, PO Box 849, Marlborough, Massachusetts 01752.

## GENERAL ALLEGATIONS

### A.     Defendant's Operations and Manufacturing Facilities

32.     Defendant is a "leading manufacturer of salad dressings and sauces, as well as mayonnaise and barbeque sauces."[6] Defendant offers a wide range of products including over

---

[6] https://jobs.kensfoods.com/our-locations/ (last visited February 23, 2024).

1,000 varieties of dressing and sauces.[7]

33.    Defendant employs or employed hourly employees, including Plaintiffs, to facilitate its operations.

34.    Plaintiffs are and were employed as hourly employees at Defendant's manufacturing facilities located in Marlborough, Massachusetts; Las Vegas, Nevada; McDonough, Georgia; and Lebanon, Indiana.[8]

**B.    Defendant Required Plaintiffs to Utilize Company-Issued PPE during their Work Shifts in Order to Comply with Company Policies, as well as Food Safety and Health Regulations**

35.    Due to food-safety and quality standards inherent in Defendant's operations, Defendant required Plaintiffs to wear company-issued PPE during their work shifts and to comply with company policies and food-safety and health regulations.

36.    The company-issued protective clothing and safety gear included button up pants, a long sleeve shirt with snaps down the middle, safety shoes, a hard hat, a coat and/or jacket, beard and hair nets, earplugs, and safety glasses.[9]

37.    Defendant required Plaintiffs to don and doff the PPE before and after their work shifts in designated locations at Defendant's manufacturing facilities.

38.    Defendant prohibited Plaintiffs from donning or doffing the PPE at home.

39.    Defendant prohibited Plaintiffs from taking the PPE home with them or otherwise removing the PPE from Defendant's manufacturing facilities.

---

[7] https://jobs.kensfoods.com/who-we-are/ (last visited February 23, 2024).
[8] https://jobs.kensfoods.com/our-locations/ (last visited February 23, 2024).
[9] The exact required PPE may vary slightly from department to department and facility to facility, however, the PPE required was either the same or substantially similar across all departments and facilities. All of Defendant's hourly employees across departments and facilities were required to wear an array of PPE, including company-issued pants, shirts, safety shoes, hard hats, coats and/or jackets, beard and hair nets, earplugs, and safety glasses.

40.     Defendant furnished Plaintiffs with freshly laundered and/or new protective clothing each workday.

41.     Defendant prohibited Plaintiffs from leaving the locker room and walking to the production areas without wearing their PPE.

42.     Defendant prohibited Plaintiffs from entering certain areas of the manufacturing facilities without wearing the appropriate PPE.

43.     Defendant prohibited Plaintiffs from leaving the production areas and walking back to the locker rooms without wearing their PPE.

44.     Defendant prohibited Plaintiffs from leaving the facilities without doffing the PPE and changing into different footwear.

45.     Plaintiffs spent substantial amounts of time each day donning and doffing the PPE and walking to and from the locker rooms and the production areas before and after their work shifts.

46.     Defendant, however, did not pay Plaintiffs for all of this time.

47.     Instead, Defendant paid Plaintiffs based on their *scheduled* shift start times and end times (e.g. 6:00 p.m. to 6:00 a.m.), not the time that Plaintiffs performed their first and last principal activities of the workday.

48.     Consequently, Defendant did not pay Plaintiffs for all compensable time, including overtime.

**C.     Pre-Shift Donning and Walking Activities**

49.     Before their scheduled shifts, Plaintiffs were required to undertake the following essential work tasks in chronological order:

- Upon arriving at their respective facility, Plaintiffs were required to "badge-in" to the facility, swiping their security badge at the employee entrance before walking inside the

building;

- Plaintiffs next walked up two flights of stairs to a break room to drop off their lunches. Once the employees dropped their lunches in the break room, they proceeded to the locker room;

- After entering the locker room, Plaintiffs retrieved their company-issued, freshly-laundered uniforms from their uniform lockers. Defendant laundered and deposited 2-7 uniforms into each Plaintiff's uniform locker each week. Once employees retrieved their day's uniform from their uniform locker, they proceeded towards their personal locker, which was in a separate area of the locker room;

- Once Plaintiffs arrived at their personal lockers, Plaintiffs unlocked their combination locks on their personal lockers. Plaintiffs then removed their shoes, stowed their personal items in their lockers, and put on their company-issued work shirts and work pants.

- Plaintiffs kept their company-issued safety shoes, hard hats, and coats/jackets inside their personal lockers. After lacing up their company-issued safety shoes, putting on their hard hats and coats/jackets, Plaintiffs locked the combination locks on their personal lockers and proceeded to walk down two flights of stairs and down a long hallway to the facility's production floor;

- Once on the production floor, Plaintiffs were required to retrieve and don their company-issued beard and hair nets, earplugs, and safety glasses;

- Following donning all of their PPE, Plaintiffs were required to engage in a handwashing routine at the handwash station on the production floor;

- Once this process was completed, Plaintiffs traversed the facility to their respective work areas.

50.    The pre-shift donning and walking process took Plaintiffs substantial time on a daily basis, ranging from 10 to 12 minutes per shift, and occurred before the beginning of their scheduled shift start time.

51.    Defendant, however, did not pay Plaintiffs for the work time spent donning and walking. Instead, Defendant paid Plaintiffs based on their *scheduled* shift start times and end times (e.g. 6:00 p.m. to 6:00 a.m.), not the time that Plaintiffs performed their first and last principal activities of the workday.

52.    Consequently, Plaintiffs performed pre-shift work in the range of 10 to 12 minutes

per shift.

**D.    Post-Shift Donning and Walking Activities**

53.    After their scheduled shifts, Plaintiffs were required to undertake the following

essential work tasks in chronological order:

- Around 2 to 3 minutes before the end of their scheduled shift, Plaintiffs began to walk from their respective workstations towards the employee breakrooms.  Once in the breakrooms, employees grabbed their lunch boxes and began to walk towards the employee locker rooms.

- After entering the locker rooms, Plaintiffs threw their beard and hair nets in the trash. Plaintiffs next changed out of their required uniforms and placed them in either a laundry basket or a laundry closet. Plaintiffs also removed their safety shoes, safety glasses, coats/jackets, and hard hats, and carried those items with them to their personal lockers. Once Plaintiffs removed their uniforms, they proceeded towards their personal lockers, which were in a separate area of the locker room.

- Once Plaintiffs arrived at their personal lockers, Plaintiffs unlocked their combination locks on their personal lockers.  Plaintiffs then removed their company-issued safety shoes, stowed their safety shoes, safety glasses, and hard hats in their personal lockers, and put on their street clothes.

- Plaintiffs next locked the combination locks on their personal lockers and proceeded to walk down two flights of stairs and down a long hallway which brought Plaintiffs to a door which led to each facility's parking lot;

- Finally, Plaintiffs would "badge out" and leave the facility.

54.    The post-shift doffing and walking process took Plaintiffs substantial time on a

daily basis, ranging from 10 to 12 minutes per shift, and occurred after the end of their scheduled

shift.

55.    Defendant, however, did not pay Plaintiffs for work spent time spent doffing and

walking. Instead, Defendant paid Plaintiffs based on their *scheduled* shift start times and end times

(e.g. 6:00 p.m. to 6:00 a.m.), not the time that Plaintiffs performed their first and last principal

activities of the workday.

56.    Consequently, Plaintiffs performed post-shift work in the range of 10 to 12 minutes

per shift without compensation.

**E.    Defendant's Timekeeping System Failed to Properly Account for Plaintiffs' Donning, Doffing, and Walking Activities**

57.    During their shifts, Plaintiffs time was tracked on Defendant's time-keeping system, but again, this time was based on their *scheduled* shift start times and end times (e.g. 6:00 p.m. to 6:00 a.m.), not the time that Plaintiffs performed their first and last principal activities of the workday.

58.    Defendant required Plaintiffs to report to their work stations and begin their activities at their scheduled shift start time (e.g., 6:00 p.m.).

59.    However, as described above, due to the extensive PPE donning, doffing, and walking process, Plaintiffs spent 20-24 minutes per day prior to and after their scheduled shift start and end times completing their required PPE donning, doffing, and walking activities.

60.    Consequently, Defendant's timekeeping system failed to account for all of the time Plaintiffs spent donning and doffing PPE.

**F.    Donning and Doffing PPE at the Worksite are Principal Work Activities and are Compensable under the FLSA**

61.    Defendant required Plaintiffs to wear the PPE during their work shifts in order to comply with company policies and food-safety and health regulations. Additionally, the PPE was an integral and indispensable part of Plaintiffs' principal work activities, as Plaintiffs could not safely or lawfully perform their work activities without wearing the PPE.

62.    Donning and doffing protective clothing and safety gear are principal activities under the Portal-to-Portal Act, 29 U.S.C. § 254, and thus time spent in those activities, as well as any walking and waiting time that occurs after the employee engages in his first principal activity and before he finishes his last principal activity, is part of a "continuous workday" and is compensable under the FLSA.

63. The determination of whether donning and doffing a safety uniform is compensable begins with *Steiner v. Mitchell*, 350 U.S. 247 (1956), the seminal case on the subject. In *Steiner*, the Supreme Court held that donning and doffing uniforms was compensable when employees were "compelled by circumstances, including vital considerations of health and hygiene, to change clothes and to shower in facilities which state law requires their employer to provide." *Id.* at 248. Under these circumstances, the Court had "no difficulty" concluding that these dress-related activities were compensable under the FLSA. *Id.* at 255.

64. Following the Supreme Court's decision in *Steiner*, the Department of Labor ("DOL") issued regulations providing further guidance about the types of dress-related activities that are compensable under the FLSA. One such regulation, 29 C.F.R. § 790.8(c), describes "principal activity" as follows:

> Among the activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance. If an employee in a chemical plant, for example, cannot perform his principal activities without putting on certain clothes, changing clothes on the employer's premises at the beginning and end of the workday would be an integral part of the employee's principal activity. On the other hand, if changing clothes is merely a convenience to the employee and not directly related to his principal activities, it would be considered as a 'preliminary' or 'postliminary' activity rather than a principal part of the activity.

65. More recently, in an advisory memorandum regarding the Supreme Court's decision in *IBP v. Alvarez*, 546 U.S. 21 (2005), the DOL reiterated its view that the FLSA requires compensation for donning and doffing safety gear when the donning and doffing activities must be performed at work. The DOL opined:

> Therefore, the time, no matter how minimal, that an employee is required to spend putting on and taking off gear on the employer's premises is compensable 'work' under the FLSA. … However, donning and doffing of required gear is within the continuous workday only when the employer or the nature of the job mandates that it take place on the employer's premises. It is our longstanding position that if employees have the option and the ability to change into the required gear at home, changing into that gear is not a principal activity, even when it takes place at the

[worksite].

Wage & Hour Adv. Mem. No. 2006-2 (May 31, 2006), available at
*https://www.dol.gov/whd/FieldBulletins/AdvisoryMemo2006_2.htm#_ftnref2*.

66.     In light of the Supreme Court's opinion in *Steiner*, numerous Circuit Courts have
endorsed the compensability of donning and doffing safety gear. For example, in *Tum v. Barber
Foods, Inc.*, 360 F.3d 274, 278 (1st Cir. 2004), the First Circuit noted with approval the district
court's opinion regarding the compensability of donning and doffing safety gear when wearing
such gear is required by the employer and/or government regulation:

> The district court found that the donning and doffing of required gear is an integral
> and indispensable part of Employees' principal activities. *See generally Steiner v.
> Mitchell,* 350 U.S. 247, 76 S.Ct. 330, 100 L.Ed. 267 (1956) (holding that activities
> should be considered integral and indispensable when they are part of the principal
> activities for the particular job tasks); *Mitchell v. King Packing Co.,* 350 U.S. 260,
> 76 S.Ct. 337, 100 L.Ed. 282 (1956). We agree with the district court's conclusion
> as to the required gear. In the context of this case, Employees are required by Barber
> Foods and or government regulation to wear the gear. Therefore, these tasks are
> integral to the principal activity and therefore compensable. *See Alvarez v. IBP,
> Inc.,* 339 F.3d 894, 903 (9th Cir. 2003) (holding that donning and doffing which is
> both required by law and done for the benefit of employer is integral and
> indispensable part of the workday); *cf.* 29 C.F.R. § 1910.132(a).

*Id*.

67.     In *Franklin v. Kellogg Co.,* 619 F.3d 604 (6th Cir. 2010), the Sixth Circuit
considered the issue of employee compensation for time spent donning and doffing food protective
clothing and safety gear at the beginning and the end of work shifts. The protective gear at issue
included hair and beard nets, safety glasses, ear plugs, and "bump caps." *Id.* at 608. The Sixth
Circuit applied the *Steiner* test, asking whether the activities of donning and doffing were an
"integral and indispensable" part of the principal activity of the employment. *Id.* at 619-20. The
Sixth Circuit answered this question in the affirmative, reasoning that the activities were required
by the manufacturer, and ensured untainted products and safe and sanitary working conditions. *Id.*

13

at 620.

68.     In a case involving the donning and doffing of protective gear at a meat processing plant, *Alvarez v. IBP, Inc.,* 339 F.3d 894 (9th Cir. 2003), *aff'd,* 546 U.S. 21 (2005), the Ninth Circuit also applied the *Steiner* test. The court considered whether these activities of donning and doffing at the beginning and end of a work shift were "integral and indispensable" to the principal activity of the employment, inquiring whether the activities were "necessary to the principal work performed and done for the benefit of the employer." *Id.* at 902-03. The Ninth Circuit concluded that the "integral and indispensable" test set forth in *Steiner* was satisfied with regard to the donning and doffing of all the protective gear at issue. *Id.* at 903.

**G.     Plaintiffs' Walking Time is Compensable Because it Occurred After the Beginning of their First Principal Activity and Before the End of their Last Principal Activity**

69.     The time spent by Plaintiffs walking to and from the locker rooms and production areas was compensable because it occurred after their first principal activity and before their last principal activity.

70.     On appeal to the Supreme Court, the employers in *Alvarez* did not challenge the Ninth Circuit's holding that, in light of *Steiner,* donning and doffing of protective equipment is compensable under the Portal Act. *Alvarez,* 546 U.S. at 32. Instead, the employers appealed a separate ruling regarding the compensability of walking time. *Id.* The Supreme Court held that walking time is compensable if it occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity. *Id.* at 37.

71.     In the wake of the Supreme Court's decision in *Alvarez*, the DOL issued an advisory memorandum stating, in pertinent part,

> The Supreme Court's unanimous decision in *Alvarez* holds that employees who work in meat and poultry processing plants must be paid for the time they spend walking between the place where they put on and take off protective equipment and the place where they process the meat or poultry. The Court determined that

donning and doffing gear is a "principal activity" under the Portal to Portal Act, 29 U.S.C. 254, and thus time spent in those activities, as well as any walking and waiting time that occurs after the employee engages in his first principal activity and before he finishes his last principal activity, is part of a "continuous workday" and is compensable under the Fair Labor Standards Act (FLSA), 29 U.S.C. 201 et seq.

Wage & Hour Adv. Mem. No. 2006-2 (May 31, 2006), available at *https://www.dol.gov/whd/FieldBulletins/AdvisoryMemo2006_2.htm#_ftnref2* (footnote omitted).

### H.    Defendant Breached its Contractual Obligation to Pay Plaintiffs their Regular Hourly Rates for Each Hour Worked

72.    In approximately October 2011, Defendant offered Plaintiff the opportunity to work for Defendant as an hourly employee.

73.    In consideration for Plaintiff's work as an hourly employee, Defendant promised to pay Plaintiff an hourly wage for each hour he worked for Defendant.

74.    In approximately October 2011, Plaintiff accepted Defendant's offer of employment and began working for Defendant, creating a valid contract between Defendant and Plaintiff whereby Defendant was obligated to pay Plaintiff his regular hourly rate of pay for each hour that he worked for Defendant, including the donning, doffing, and walking activities described herein.

75.    Additionally, pursuant to this contract, Defendant was obligated to pay Plaintiff his proper overtime rate for all hours worked over 40 hours in a workweek.

76.    Throughout his employment with Defendant as an hourly employee, Plaintiff performed all of the work required by Defendant, including the donning, doffing, and walking described herein. Plaintiff also regularly worked over 40 hours in a workweek, entitling him to overtime pay. In performing this work, Plaintiff fulfilled all of his duties under the contract.

77.    However, throughout Plaintiff's entire employment with Defendant, Defendant repeatedly and systematically breached the contract by not paying Plaintiff his regular hourly rate

of pay for the donning, doffing, and walking activities described herein, as well as failing to pay Plaintiff his proper overtime rate.

78.    Defendant's failure to pay Plaintiff for each hour of work he performed and that was required of him as an hourly employee, was a material breach by Defendant of the parties' contract.

79.    Because of Defendant's breaches, Plaintiff was deprived of wages owed to him under the contract, including unpaid "gap time" wages.[10]

80.    Upon information and belief, Defendant had a similar valid contact with each of the other Plaintiffs.

81.    Upon information and belief, Defendant repeatedly and systematically breached its contracts with all the Plaintiffs it employed in the same way that it breached its contract with Plaintiff.

82.    Defendant's contractual promises to pay Plaintiffs their applicable hourly rate for each hour worked and their overtime rate for overtime hours is evidenced by, among other things, earnings statement issued to the Plaintiffs.

83.    Plaintiffs are owed wages at their contractual hourly wage rates for the time that they worked off the clock during their employment with Defendant, including unpaid "gap time" wages and overtime wages.

84.    Plaintiffs earned these wages at the moment they performed the off-the-clock work, and the wages were due to be paid to Plaintiffs no later than the pay day for the period in which

---

[10] "Gap time" refers to time that is not covered by the FLSA's overtime provisions because it does not exceed the overtime limit, and to time that is not covered by the FLSA's minimum wage provisions because, even though it is uncompensated, the employees are still being paid a minimum wage when their weekly wages are averaged across their actual time worked.

the off-the-clock work was performed.

85.    According to the parties' contract, Defendant was required to pay Plaintiffs for the off-the-clock work because it constituted principal work activities that are integral and indispensable to Plaintiff's work.

86.    The fact that Defendant deliberately chose not to compensate Plaintiffs for this work, and that the off-the-clock work was performed before and after Plaintiffs' scheduled shifts, does not somehow relieve Defendant of its contractual obligations to pay the Plaintiffs for this time.

87.    Defendant was contractually obligated to pay Plaintiffs the appropriate hourly rate for *all hours worked*, including hours worked before and after their scheduled work shifts, because that is what the parties agreed to in their contract.

I.    **Defendant Benefitted from the Unpaid Donning, Doffing, and Walking Activities**

88.    At all relevant times, Defendant directed and directly benefited from the work performed by Plaintiffs in connection with the above-described pre-shift donning and walking activities, and post-shift doffing and walking activities, and was aware it was occurring off the clock and without compensation.

89.    Plaintiffs' pre-shift donning and walking, and post-shift doffing and walking, conferred a benefit on Defendant in that they were ready to work in the required PPE at the beginning of their shift, and doffed the required PPE after the conclusion of their shifts, and that Defendant saved the funds it would have spent had it paid Plaintiffs for that work.

90.    At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments and employment conditions of Plaintiffs.

91.    At all relevant times, Defendant was able to track the amount of time Plaintiffs spent in connection with the pre-shift donning and walking and post-shift doffing and walking

activities. However, Defendant failed to do so and failed to pay Plaintiffs for all of the work they performed.

92.    At all relevant times, Defendant used its attendance and adherence policies against Plaintiffs in order to pressure them into performing the pre-shift donning and walking activities and post-shift doffing and walking activities without pay.

93.    Defendant expressly trained and instructed Plaintiffs to begin performing the above-described pre-shift donning and walking activities *before* the start of their scheduled shifts to ensure they were prepared to engage in their work activities prior to the start of their shifts. Additionally, Defendant expressly trained and instructed Plaintiffs to begin performing the above-described post-shift doffing and walking activities *after* the end of their scheduled shifts to ensure they doffed their PPE "off the clock"

94.    At all relevant times, Defendant's policies and practices deprived Plaintiffs of wages owed for the pre-shift donning and walking activities and post-shift doffing and walking activities they performed. Because Plaintiffs regularly worked 40 hours or more per week, Defendant's policies and practices also deprived them of overtime pay.

95.    Defendant knew or should have known that the time spent by Plaintiffs in connection with the pre-shift donning and walking activities and post-shift doffing and walking activities was compensable under the law. Indeed, in light of the explicit DOL guidance and Supreme Court case law cited above, there is no conceivable way for Defendant to establish that they acted in good faith.

96.    Despite knowing Plaintiffs performed work before and after their scheduled work shifts, Defendant failed to make any effort to stop or disallow the pre- and post-shift work and instead suffered and permitted it to happen.

97.     Depending on when the uncompensated work was performed, unpaid wages related to the pre- and post-shift work described herein are owed to Plaintiffs at the mandated overtime premium or at their standard rate of pay.

## FLSA COLLECTIVE ACTION ALLEGATIONS

98.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on his own behalf and on behalf of:

> ***All current and former hourly employees who worked for Ken's Foods, Inc. at any of its manufacturing facilities during the last three years.***

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

99.     Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and the members of the FLSA Collective.

100.    Excluded from the FLSA Collective are Defendant's executives and administrative and professional employees, including computer professionals and outside salespersons.

101.    Consistent with Defendant's policy and pattern or practice, Plaintiff and the members FLSA Collective were not paid premium overtime compensation for all hours worked over 40 in a workweek.

102.    Defendant assigned and/or was aware of all of the work that Plaintiff and members of the FLSA Collective performed.

103.    As part of their regular business practices, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

> a.    Willfully failing to pay their employees, including Plaintiff and the members of the FLSA Collective, premium overtime wages for all hours

worked in excess of 40 hours per workweek; and

b.      Willfully failing to record all of the time that their employees, including Plaintiff and the members of the FLSA Collective, worked for the benefit of Defendant.

104.    Defendant is aware or should have been aware that federal law required them to pay Plaintiff and the members of the FLSA Collective overtime premiums for all hours worked in excess of 40 per workweek and at rates that included shift premium pay.

105.    Defendant's unlawful conduct has been widespread, repeated, and consistent.

106.    A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policies, or plans; and (d) their claims are based upon the same factual and legal theories.

107.    The employment relationships between Defendant and every proposed FLSA Collective member is the same. The key issues - the amount of uncompensated pre-shift donning and walking time, and post-shift doffing and walking time - do not vary substantially or materially among the proposed FLSA Collective members.

108.    The members of the FLSA Collective and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

109.    Court-supervised notice should be sent to the members of the FLSA Collective pursuant to 29 U.S.C. § 216(b).

110.    Those employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

111.    Plaintiff estimates the proposed FLSA Collective, including both current and

former employees over the relevant period, will include thousands of workers. The precise number of FLSA Collective members should be readily ascertainable from a review of Defendant's personnel and payroll records.

## RULE 23 MASSACHUSETTS CLASS ACTION ALLEGATIONS

112.    Plaintiff Austin brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on his own behalf and on behalf of:

> *All current and former hourly employees who worked for Ken's Foods, Inc. at any of its manufacturing facilities during the applicable statute of limitations period in Massachusetts.*

(hereinafter referred to as the "Rule 23 Massachusetts Class"). Plaintiff Austin reserves the right to amend the putative class definition if necessary.

113.    The members of the Rule 23 Massachusetts Class are so numerous that joinder of all Rule 23 Massachusetts Class members in this case would be impractical. Plaintiff Austin reasonably estimates there are dozens, if not hundreds, of Rule 23 Massachusetts Class members. Rule 23 Massachusetts Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

114.    There is a well-defined community of interest among Rule 23 Massachusetts Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Massachusetts Class. These common legal and factual questions include, but are not limited to, the following:

a.    Whether the time Rule 23 Massachusetts Class members spent on pre- and post-shift activities outside of their scheduled shift time for each shift is compensable time;

b.    Whether Rule 23 Massachusetts Class members are owed wages for time spent performing off-the-clock work activities, and, if so, the appropriate amount thereof;

115.    Plaintiff Austin's claims are typical of those of the Rule 23 Massachusetts Class in

that he and all other Rule 23 Massachusetts Class members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiff Austin's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Massachusetts Class members' claims, and his legal theories are based on the same legal theories as all other Rule 23 Massachusetts Class members.

116.    Plaintiff Austin will fully and adequately protect the interests of the Rule 23 Massachusetts Class and has retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff Austin nor his counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Massachusetts Class.

117.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, *inter alia*, it is economically infeasible for Rule 23 Massachusetts Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

118.    This case will be manageable as a class action. Plaintiff Austin and his counsel know of no unusual difficulties in this case, and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

119.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

120.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Massachusetts Class and declaratory relief is appropriate in this case with respect to the Rule 23 Massachusetts Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

### RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

121.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on his own behalf and on behalf of:

> *All current and former hourly employees who worked for Ken's Foods, Inc. at any of its manufacturing facilities during the applicable statute of limitations period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend the putative class definition if necessary.

122.    The Rule 23 Nationwide Class members are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are thousands of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

123.    There is a well-defined community of interest among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions include, but are not limited to, the following:

      a.    Whether the time Rule 23 Nationwide Class members spent on pre-shift donning and walking activities, and post-shift doffing and walking activities, is compensable time;

      b.    Whether Rule 23 Nationwide Class members are owed wages for time spent performing pre-shift donning and walking activities, and post-shift doffing and walking activities, and if so, the appropriate amount thereof; and

      c.     Whether Defendant's non-payment of wages for all compensable time constitutes breach of contract or unjust enrichment.

124.    Plaintiff's claims are typical of the Rule 23 Nationwide Class members' claims because Plaintiff and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims, and his legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

125.    Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and has retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

126.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

127.    This case will be manageable as a class action. Plaintiff and his counsel know of no unusual difficulties in this case, and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

128.    Because the elements of Fed. R. Civ. P. 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Associates, P.A.*, 559 U.S. at 398 ("By its

terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

129.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification under Fed. R. Civ. P. 23(b)(2) is also appropriate.

**COUNT I**
**VIOLATION OF FLSA, 29 U.S.C. § 201 *et seq*.**
**FAILURE TO PAY OVERTIME WAGES**
**(29 U.S.C. § 216(b) Collective Action)**

130.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

131.    At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

132.    At all times relevant to this action, Plaintiff and the members of the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

133.    Plaintiff and the members of the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

134.    Plaintiff and the members of the FLSA Collective either: (1) engaged in commerce; (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

135.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the members of the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

136.    At all times relevant to this action, Defendant required Plaintiff and the members of the FLSA Collective to perform unpaid off-the-clock work in connection with their donning,

doffing, and walking activities, but failed to pay these employees the federally mandated overtime compensation for the off-the-clock work.

137.    The off-the-clock work performed every shift by Plaintiff and the members of the FLSA Collective is an essential part of their jobs, and these activities and the time associated with these activities are not *de minimis*.

138.    In workweeks where Plaintiff and other FLSA Collective members worked over 40 hours, Defendant failed to compensate Plaintiff and the FLSA Collective members for the unpaid off-the-clock work time, and all other overtime, at the federally mandated rate of one and one-half times each employee's regular hourly wage. 29 U.S.C. § 207.

139.    Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have determined how long it takes Plaintiff and the members of the FLSA Collective to perform their off-the-clock work. Further, Defendant could have easily accounted for and properly paid Plaintiff and the members of the FLSA Collective for these work activities, but deliberately chose not to.

140.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs, reasonable attorneys' fees, and pre- and post-judgment interest.

## COUNT II
### (On Behalf of the Rule 23 Massachusetts Class)
### M.G.L. ch. 151 §1A (MASSACHUSETTS OVERTIME ACT)

141.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

142.    Defendant was an "employer" of Plaintiff Austin and the members of the Rule 23 Massachusetts Class who worked at its Massachusetts facilities as that term is used in the Massachusetts Overtime Act (the "Massachusetts Employees"). Defendant failed to pay overtime

for all hours worked over 40 in a workweek to Plaintiff Austin and the Massachusetts Employees in violation of the Massachusetts Overtime Act.

143.    Due to Defendant's violation of the Massachusetts Overtime Act, Plaintiff Austin and the Massachusetts Employees have incurred harm and loss and are entitled to recover from Defendant unpaid overtime mandatorily trebled, reasonable attorneys' fees, costs of the action, and pre- and post-judgment interest.

**COUNT III**
**(On Behalf of the Rule 23 Massachusetts Class)**
**M.G.L. ch. 149 §148 (MASSACHUSETTS WAGE ACT)**

144.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

145.    Defendant was an employer of Plaintiff Austin and the members of the Rule 23 Massachusetts Class who worked at its Massachusetts facilities as that term is used in the Massachusetts Wage Act (the "Massachusetts Employees").

146.    Defendant failed to pay wages for all hours worked in a workweek, and at the required rates, to Plaintiff Austin and the Massachusetts Employees in violation of the Massachusetts Wage Act.

147.    Due to Defendant's violation of the Massachusetts Wage Act, Plaintiff Austin and the Massachusetts Employees have incurred harm and loss and are entitled to recover from Defendant unpaid overtime mandatorily trebled, reasonable attorneys' fees, costs of the action, and pre- and post-judgment interest.

**COUNT IV**
**BREACH OF CONTRACT**
**(On Behalf of the Rule 23 Nationwide Class)**

148.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

149.    At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour

they worked at a certain hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on Defendant's behalf.

150.    Defendant's contractual promises to pay Plaintiff and each Rule 23 Nationwide Class member's applicable hourly rate is evidenced by, among other things, each earnings statement issued to Plaintiff and the Rule 23 Nationwide Class members.

151.    Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises and performed under the contract by doing their jobs and carrying out the work they performed each shift, including the unpaid off-the-clock work that was required of them, accepted by Defendant, and that they performed, in connection with the donning, doffing, and walking activities described herein.

152.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work they performed, Defendant systematically breached its contracts with Plaintiff and each Rule 23 Nationwide Class member.

153.    Plaintiff's and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week (i.e., pure "gap time" claims) and to the extent the limitations period on these claims is longer than that under the FLSA.

154.    As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members have been damaged in an amount to be determined at trial.

### COUNT V
### UNJUST ENRICHMENT
### (On Behalf of the Rule 23 Nationwide Class)

155.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

156.    This Count is pled in the alternative to Count IV, *supra*, pursuant to Fed. R. Civ. P.

8(d)(2)-(3).

157.    At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a certain hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

158.    Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for this rate and performed by doing their jobs and carrying out their required work duties.

159.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly rate for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

160.    Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of, without objection by, and for the benefit of, Defendant, and conferred a benefit on Defendant by doing so.

161.    Defendant appreciated, was aware of, received, and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom, including increased profits, without having paid for the same.

162.    Upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance their various business ventures or pay their equity owners.

163.    Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having paid Plaintiff and the Rule 23 Nationwide Class for the same.

164.    Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's

failure to pay them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

165.    As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on his own behalf and on behalf of the putative FLSA Collective and Rule 23 Classes, requests judgment as follows:

a.    Certifying this case as a collective action under 29 U.S.C. § 216(b) with respect to Plaintiff's FLSA claim (Count I);

b.    Certifying this action as a class action (for the Rule 23 Massachusetts Class) under Fed. R. Civ. P. 23(b)(2) and (b)(3) with respect to Plaintiff's Massachusetts state law claims (Counts II-III);

c.    Certifying this action as a class action (for the Rule 23 Nationwide Class) under Fed. R. Civ. P. 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts IV-V);

d.    Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses, email addresses, phone numbers and dates and location of employment of all FLSA Collective members, and permitting Plaintiff to send notice of this action to all those similarly situated individuals, apprising the FLSA Collective members of their rights by law to join and participate in this lawsuit;

e.    Designating Plaintiff as the representative of the FLSA Collective and the Rule 23 Classes, and undersigned counsel as Class counsel for the same;

f.    Declaring Defendant violated the FLSA and the DOL's attendant regulations as cited herein;

g.    Declaring Defendant's violations of the FLSA were willful;

h.    Declaring Defendant violated the Massachusetts Overtime Act and the Massachusetts Wage Act;

i.    Declaring Defendant's violations of the Massachusetts Overtime Act and the Massachusetts Wage Act were willful;

j.      Declaring Defendant breached its contracts with Plaintiff and the Rule 23
        Nationwide Class members (or, in the alternative, that Defendant was unjustly
        enriched) by failing to pay them for each hour they worked at a pre-established
        (contractual) regularly hourly rate;

k.      Granting judgment in favor of Plaintiff and against Defendant and awarding
        Plaintiff and the FLSA Collective and the Rule 23 Classes the full amount of
        damages and liquidated damages available by law;

l.      Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this
        action as provided by statute;

m.      Awarding pre- and post-judgment interest to Plaintiff on these damages; and

n.      Awarding such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiff, individually and on behalf of all others similarly situated, by and through his

attorneys, hereby demands a trial by jury under Fed. R. Civ. P. 38.

Dated:  March 5, 2024                          Respectfully Submitted,

                                               Benjamin Knox Steffans (BBO# 568535)
                                               Steffans Legal PLLC
                                               10 Wendell Ave. Ext. Ste 208
                                               Pittsfield, MA 01201
                                               413-418-4176
                                               bsteffans@steffanslegal.com

                                               Kevin J. Stoops (P64371)*
                                               Jesse L. Young (P72614)*
                                               Albert J. Asciutto (P82822)*
                                               Sommers Schwartz, P.C.
                                               One Towne Square
                                               17th Floor
                                               Southfield, Michigan 48076
                                               (248) 355-0300
                                               kstoops@sommerspc.com
                                               jyoung@sommerspc.com
                                               aasciutto@sommerspc.com
                                               *pro hac vice motions forthcoming
                                               *Attorneys for Plaintiff and the Putative
                                               Collective/Class Members*